**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION**

| | | |
|---|---|---|
| **SUSAN L.[1],** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 7:22-cv-00394** |
| | ) | |
| **KILOLO KIJAKAZI,** | ) | |
| **Acting Commissioner of Social Security,** | ) | |
| | ) | |
| | ) | |
| **Defendant.** | ) | |

## <u>MEMORANDUM OPINION</u>

Plaintiff Susan L. ("Susan") filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") finding her not disabled and therefore ineligible for Disability Insurance Benefits ("DIB") under the Social Security Act ("Act"). 42 U.S.C. §§ 401–433. Susan alleges that the ALJ did not properly analyze the opinion of her treating mental health professional, Dr. John Heil, D.A., and erred in concluding that she had only mild limitations in all four broad functional areas.

I conclude that substantial evidence does not support the Commissioner's decision. Accordingly, Susan's Motion for Summary Judgment is **GRANTED in part** (Dkt. 11), the Commissioner's motion for summary judgment is **DENIED** (Dkt. 14) and this case is **REMANDED** to the Commissioner for further administrative proceedings consistent with this opinion.

---

[1] Due to privacy concerns, I use only the first name and last initial of the claimant in social security opinions.

## STANDARD OF REVIEW

This court limits its review to a determination of whether substantial evidence exists to support the Commissioner's conclusion that Susan failed to demonstrate that she was disabled under the Act.[2] Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations and alterations omitted); see also Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019) (emphasizing that the standard for substantial evidence "is not high"). "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." Mastro, 270 F.3d at 176 (quoting Craig v. Chater, 76 F.3d at 589). Nevertheless, the court "must not abdicate [its] traditional functions," and it "cannot escape [its] duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). The final decision of the Commissioner will be affirmed where substantial evidence supports the decision. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

However, remand is appropriate if the ALJ's analysis is so deficient that it "frustrate[s] meaningful review." Mascio v. Colvin, 780 F.3d 632, 636 (4th Cir. 2015) (noting that "remand is necessary" because the court is "left to guess [at] how the ALJ arrived at his conclusions"); see

---

[2] The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects his ability to perform daily activities or certain forms of work. Rather, a claimant must show that his impairments prevent him from engaging in all forms of substantial gainful employment given his age, education, and work experience. See 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

2

also Monroe v. Colvin, 826 F.3d. 176, 189 (4th Cir. 2016) (emphasizing that the ALJ must

"build an accurate and logical bridge from the evidence to his conclusion" and holding that

remand was appropriate when the ALJ failed to make "specific findings" about whether the

claimant's limitations would cause him to experience his claimed symptoms during work and if

so, how often) (citation omitted). I find that remand is appropriate here because the ALJ failed to

properly consider the opinions of Susan's treating mental health provider.

## CLAIM HISTORY

Susan filed for DIB in February 2020, claiming her disability began on October 13, 2019,

due to bilateral knee pain status post bilateral knee replacement, major depressive disorder

(severe with anxious distress), severe insomnia, fibromyalgia, pain in her neck, back, shoulders,

and arms, irritable bowel syndrome ("IBS"), and trouble gripping and using her hands. R. 77, 89.

The state agency denied Susan's applications at the initial and reconsideration levels of

administrative review. R. 76–86, 88–100. On September 8, 2021, ALJ Michael Dennard held a

hearing to consider Susan's claims for DIB. R. 35–75. Counsel represented Susan at the hearing,

which included testimony from vocational expert Gerald Wells. On October 13, 2021, the ALJ

entered his decision analyzing Susan's claims under the familiar five-step process[3] and denying

her claims for benefits.[4] R. 15–28.

---

[3] The five-step process to evaluate a disability claim requires the Commissioner to ask, in sequence,
whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the
requirements of a listed impairment; (4) can return to his past relevant work; and if not, (5) whether he can perform
other work. Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R.§ 404.1520);
Heckler v. Campbell, 461 U.S. 458, 460–62 (1983). The inquiry ceases if the Commissioner finds the claimant
disabled at any step of the process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of
proof at steps one through four to establish a prima facie case for disability. At the fifth step, the burden shifts to the
Commissioner to establish that the claimant maintains the residual functional capacity ("RFC"), considering the
claimant's age, education, work experience, and impairments, to perform available alternative work in the local and
national economies.  42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

[4] Susan was 58 years old on her alleged onset date, making her a person of advanced age under the Act.
R. 76.

3

The ALJ found that Susan suffered from the severe impairments of lumbar degenerative disc disease, status post bilateral knee replacements, and obesity. R. 17. The ALJ found that Susan was mildly limited in the broad functional areas of understanding, remembering, or applying information, interacting with others, concentrating, persisting, or maintaining pace, and adapting or managing oneself. R. 19–20.

The ALJ determined that Susan's mental and physical impairments, either individually or in combination, did not meet or medically equal a listed impairment. R. 21. The ALJ specifically considered listing 1.15 (compromise of a nerve root), listing 1.18 (abnormality of a major joint), and SSR 19-2p[5] (obesity). R. 21–22.

The ALJ concluded that Susan retained the residual functional capacity ("RFC") to perform sedentary work. R. 22. Susan can occasionally operate foot controls with the right and left feet. Id. She can occasionally climb ramps, stairs, ladders, ropes, or scaffolds. Id. Susan can occasionally stoop, kneel, crouch, and crawl and can occasionally work at unprotected heights, around hazardous machinery, and in vibration. Id. She can frequently balance. Id. The ALJ determined that Susan had past relevant work as an operations analyst and a scheduler. R. 27. Thus, the ALJ determined that Susan was not disabled. R. 28. Susan appealed the ALJ's decision, and the Appeals Council denied her request for review on June 9, 2022. R. 1–4.

---

[5] Social Security Rulings are "final opinions and orders and statements of policy and interpretations" that the Social Security Administration has adopted. 20 C.F.R. § 402.35(b)(1). Once published, these rulings are binding on all components of the Social Security Administration. Heckler v. Edwards, 465 U.S. 870, 873 n.3 (1984); 20 C.F.R. § 402.35(b)(1). "While they do not have the force of law, they are entitled to deference unless they are clearly erroneous or inconsistent with the law." Pass v. Chater, 65 F.3d 1200, 1204 n.3 (4th Cir. 1995).

## ANALYSIS

Susan alleges that the ALJ did not properly consider the opinions of Dr. Heil and the ALJ's decision to find Dr. Heil's opinions not persuasive is not supported by substantial evidence.

### A.  Medical History Overview

1. Medical Treatment

Susan has a history of pain in her lower back and her knees, which especially increases after falls.[6] R. 371, 379, 525, 533, 576, 628. Susan followed with a pain management specialist, who provided Susan with injections, CBD oil, and medications and recommended physical therapy. R. 346, 363, 383, 531, 577, 627. Susan was also referred for Ketamine treatments to help with her pain and depression. R. 531, 539, 655. At appointments, Susan had an antalgic gait and pain with certain movements. R. 382, 537, 576. An October 2019 X-ray showed "fairly advanced disc degenerative changes at the L2-3, L3-4, and L4-5 levels[,] . . . mild-to-moderate disc degenerative changes at L1-2 and L5-S1[, and] . . . moderate facet degenerative and hypertrophic changes throughout the mid to lower lumbar levels." R. 377.

In October 2019, Susan's pain management specialist referred her to Dr. Heil for treatment of pain-related depression. R. 377. Susan had her first appointment with Dr. Heil in December 2019, and although Dr. Heil did not give a formal diagnosis, he concluded that Susan's answers to questions were consistent with clinical depression and clinical anxiety disorder and that she had a severe clinical psychological disorder with risk for decompensation. R. 463, 465. Dr. Heil also concluded that Susan's attention/concentration, memory, and judgment/insight were intact but found that she had decreased cognitive function and was tearful.

---

[6] Susan had a left total knee replacement in November 2015 and a right total knee replacement in February 2016. R. 376.

R. 464. In subsequent appointments with Dr. Heil and others at his practice from December 2019 through March 2020, Susan's functioning was found to be mostly fair, but in February 2020, her functioning was labeled poor and variable, and in March 2020, her function was labeled fair, poor, and variable. R. 456–61. Susan had repeated complaints of insomnia, chronic pain, and symptoms of her anxiety and depression and was tearful at multiple sessions. Id.

Susan also attended appointments with Dr. Heil and others at his practice from November 2020 through January 2021. R. 613–19. At six out of seven appointments during that period, Susan's functioning was poor. Id. In December 2020, Susan was referred for evaluation at Star Behavioral Health for medical management of chronic depression. R. 616.

2.   Medical Opinions

In March 2020, Susan's mental health provider, Dr. Heil, completed a mental health assessment. R. 680–84. Dr. Heil concluded that Susan has extreme limitations in maintaining regular attendance and being punctual, completing a normal workday and workweek, and performing at a consistent pace. R. 681. He also found that Susan had marked limitations maintaining attention for two-hour segments, accepting instructions and responding to criticism, responding to changes in a routine work setting, and dealing with normal work stress. R. 680–81. Dr. Heil concluded that Susan had moderate limitations in carrying out short and simple instructions, sustaining an ordinary routine without special supervision, and being aware of normal hazards. Id. The ALJ found this opinion not persuasive. R. 21. The ALJ reasoned that Dr. Heil's "great limitations are not supported by the limited mental health records and are not consistent with the other provider records." Id.

In June 2020 and October 2020, respectively, state agency psychiatrists Leslie Montgomery, Ph.D., and Howard Leizer, Ph.D., reviewed the record and found that Susan had

mild limitations in understanding, remembering, or applying information, interacting with others, concentration, persistence, or pace, and adapting or managing oneself. R. 82, 95. Drs. Montgomery and Leizer also concluded that Susan's alleged mental impairments, including depression and anxiety, are non-severe impairments. Id. The ALJ found these opinions persuasive. R. 21. The ALJ reasoned that Susan's pain management provider had normal psychological findings and that although "mental health provider records noted tearfulness in some visits," Susan "did not indicate suicidal ideation or significant difficulty with panic issues in visits." Id.

In June 2020 and October 2020, respectively, state agency physicians Robert McGuffin, M.D., and Michael Koch, M.D., reviewed the record and found that Susan could occasionally lift and carry 20 pounds and frequently lift and carry 10 pounds. R. 83–84, 97. Dr. McGuffin concluded that Susan could stand, walk, or sit for six out of eight hours of the workday, R. 84, while Dr. Koch concluded that Susan could stand or walk for four out of eight hours and could sit for six out of eight hours of the workday. R. 97. Dr. McGuffin found that Susan had no postural, manipulative, visual, communicative, or environmental limitations. R. 84. Dr. Koch found that Susan had environmental limitations. R. 98. The ALJ found Dr. Koch's opinion to be partially persuasive and Dr. McGuffin's opinion to be "less persuasive." R. 27. The ALJ reasoned that Susan's "significant lumbar degeneration indicates her standing/walking and lifting/carrying would be more limited." Id.

### B.  Medical Opinion Evidence

Susan argues that the ALJ erred in his consideration of Dr. Heil's opinions and should not have rejected Dr. Heil's conclusions about Susan's mental impairments and her ability to work. Susan contends that "Dr. Heil's opinions are consistent with his treatment notes and the other

7

substantial evidence of record and clearly establish [Susan's] mental impairments are severe[.]"
Pl.'s Br. at 26–27, Dkt. 12. Specifically, Susan argues that the ALJ erred by concluding that Dr.
Heil's findings regarding her decreased cognitive function were vague and not supported by the
record. Id. at 25. Susan further argues that the ALJ's reliance on her pain management provider
not noting psychological abnormalities is inconsistent with the later medical record and not
supported by substantial evidence. Id. at 27–28. The Commissioner counters that "[t]he ALJ did
all that was required under the applicable regulatory scheme." Def.'s Br. at 11, Dkt. 15.

    Susan submitted her application in February 2020, thus, 20 C.F.R. §§ 404.1520c governs
how the ALJ considered the medical opinions here.[7] When making an RFC assessment, the ALJ
must assess every medical opinion received in evidence. The regulations provide, however, that
the ALJ "will not defer or give any specific evidentiary weight, including controlling weight" to
any medical opinions or prior administrative medical findings, including those from the
claimants' medical sources. 20 C.F.R. §§ 404.1520c(a), 416.920c(a). The most important factors
in evaluating the persuasiveness of these medical opinions and prior administrative medical
findings are supportability and consistency, and the ALJ will explain how he considered these
two factors in his decision. Id. "Supportability" means "[t]he extent to which a medical source's
opinion is supported by relevant objective medical evidence and the source's supporting
explanation." Revisions to Rules, 82 Fed. Reg. at 5853; see also 20 C.F.R. §§ 404.1520c(c)(1),
416.920c(c)(1). "Consistency" denotes "the extent to which the opinion is consistent with the
evidence from other medical sources and nonmedical sources in the claim." Revisions to Rules,
82 Fed. Reg. at 5853; see also 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2). The ALJ is not

_____

[7] 20 C.F.R. §§ 401.1520c, 416.920c applies to claims filed on or after March 27, 2017. For claims filed
before this date, the rules in § 404.1527 apply.

required to explain the consideration of the other three factors, including relationship with the claimant, specialization, and other factors such as an understanding of the disability program's policies and evidentiary requirements. Id.[8]

The ALJ considered Dr. Heil's March 2020 mental health assessment, noting that Dr. Heil "check-marked" that Susan "had extreme limitations in maintaining regular attendance, completing a normal workday and workweek, and performing a consistent pace[,] . . . marked limitations accepting instructions and criticism, getting along with coworkers, and dealing with work stress[, and] . . . moderate limitations carrying out very short and simple instructions." R. 20. The ALJ also considered Dr. Heil's December 2019 interaction with Susan, where Dr. Heil noted that Susan was tearful and could not complete a serial 7's test. Id.

The ALJ found Dr. Heil's opinions unpersuasive and noted that Susan's tearfulness at her December 2019 visit occurred because Susan "was just beginning mental health visits, and she was discussing her concerns, which would understandably lead to difficult emotions." R. 20. Further, the ALJ noted that Susan did not have thought abnormalities and that she had a "tendency to overreport psychological symptoms." Id. The ALJ reasoned that although Dr. Heil "check-marked fair or poor functioning, . . . the records do not indicate she was having difficulty with daily living." R. 21. The ALJ noted that Susan "discussed how others did not approve of her at work despite her sacrifices" and that "she was a perfectionist and took responsibility for everything." Id. However, the ALJ reasoned that these discussions do "not indicate intense psychological issues." Id. The ALJ also found Dr. Heil's opinion unpersuasive because Susan's

---

[8] An exception to this is that when the ALJ finds that two or more "medical opinions or prior administrative medical findings about the same issue are both equally well–supported [] and consistent with the record [] but are not exactly the same," the ALJ will explain how he considered the other most persuasive factors including:  the medical source's relationship with the claimant, specialization, and other factors that tend to support or contradict a medical opinion. 20 C.F.R. §§ 404.1520c(b)(3).

pain management provider stated Susan was able to do serial 7's and did not note psychological abnormalities. R. 20–21.

I agree with Susan that the ALJ did not properly consider Dr. Heil's opinions under the new regulations. While an ALJ does not have to afford a treating provider's opinion persuasive weight, the ALJ must address both supportability and consistency when analyzing a medical opinion in the record. Here, the ALJ simply did not do so. The ALJ argues that Dr. Heil's conclusions are not consistent with the record because Susan's pain management specialist did not note any psychological abnormalities. R. 20–21. However, the pain management specialist is not a mental health provider and does not focus her visits on discussing and evaluating Susan's mental health. Instead, Susan sought treatment from the pain management specialist for pain in her knees and lower back. R. 371, 379, 525, 533, 576, 628. Even so, the pain management specialist repeatedly noted that Susan complained of depression and was seeking treatment from Dr. Heil. R. 354, 363, 377. It is unclear how a minimal psychological screening at a pain management specialist undermines the conclusions of the mental health professionals who interacted with Susan.

The ALJ notes that from November 2020 through January 2021, Susan had fair or poor functioning at most of her mental health visits, but "the records do not indicate she was having difficulty with activities of daily living." R. 21. It is unclear what activities of daily living the ALJ refers to, considering that the ALJ does not cite to any activities or to any evidence in the record and does not indicate how these daily activities connect to the four broad functional areas. The ALJ also points to Susan's discussions about "how others did not approve of her work despite her sacrifices" and that "she was a perfectionist and took responsibility for everything" to conclude that Susan does not have "intense psychological issues." R. 21. The ALJ reasons away

10

Susan's tearfulness and allegations of depression and mental illness because she had just begun therapy and tended to overreport her symptoms. R. 20. It is unclear how the ALJ made these conclusions, how these conclusions have anything to do with Susan's cognitive functioning, or how these conclusions would undermine the opinions of Dr. Heil related to Susan's cognitive functioning. The ALJ's unsupported opinions about Susan's mental health are not enough to undermine the opinions of mental health professionals or show that Dr. Heil's opinions are not consistent with or supported by the record.

I recognize that it is not my function to conduct a blank slate review of the evidence by reweighing conflicting evidence, determining credibility, or substituting my judgment for the ALJ's when "reasonable minds could differ." See Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012); Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996). In fact, I am precluded from doing so; it is the duty of the ALJ to explain the basis for his opinion. However, here, the ALJ failed to adequately consider Dr. Heil's opinions and relied upon unpersuasive and unsupported reasoning to discount the relevant opinions of the record. Accordingly, I conclude that the ALJ's decision is not supported by substantial evidence. [9]

## CONCLUSION

For these reasons, an order will be entered **DENYING** the Commissioner's motion for summary judgment, **GRANTING in part** Plaintiff's motion for summary judgment, and **REMANDING** this case to the Commissioner.

---

[9] Because I find that remand is warranted based on the ALJ's failure to adequately analyze Dr. Heil's opinions, Susan's additional allegations of error will not be decided. See Boone v. Barnhart, 353 F.3d 203, 211 n.19 (3d Cir. 2003) (remanding on other grounds and declining to address claimant's additional arguments).

Entered:  August 3, 2023

*Robert S. Ballou*

Robert S. Ballou
United States District Judge